IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JACQUELINE T. GRAY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-05-1748 |
| | § | |
| JO ANNE BARNHART, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER
GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jacqueline T. Gray ("Gray") appeals from a denial of supplemental security income

benefits by Defendant Jo Anne Barnhart, Commissioner of the Social Security Administration

("Commissioner").   Before the Court are Plaintiff's Motion for Summary Judgment and

Memorandum in Support (Document No. 6), as well as Defendant's Cross Motion for Summary

Judgment (Document No. 7).  Having considered the motions, the administrative record, and the

applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for

Summary Judgment is DENIED, Defendant's Cross-Motion for Summary Judgment is GRANTED,

and the Commissioner's decision is AFFIRMED.

**I.  INTRODUCTION AND BACKGROUND**

Plaintiff Jacqueline T. Gray ("Gray") filed this action pursuant to Section 205(g) of the

Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's

adverse final decision denying her application for supplemental security income benefits.  Gray

alleges in her Complaint that: (1) substantial evidence does not support the Administrative Law

Judge's ("ALJ") step-five decision regarding the severity of her mental impairment, and (2) the ALJ

applied an incorrect legal standard in his step-five determination.  The Commissioner, in contrast,

contends that there is substantial evidence in the record to support the ALJ's decision, that the

decision comports with applicable law, and that the decision should be affirmed.

## II.  ADMINISTRATIVE PROCEEDINGS

On June 13, 2002, Gray filed an application for Supplemental Security Income payments

under Title XVI of the Social Security Act, alleging disability beginning on that date as a result of

degenerative disc disease, hypertension, sacroilitis, and a history of hepatitis C (Tr. 67).[1]  The Social

Security Administration denied her application at the initial and reconsideration stages. (Tr. 31, 36).

On November 21, 2002, Gray requested a hearing before an ALJ.  (Tr. 35).  The Social Security

Administration granted her request and the ALJ, Phillip R. Kline, held a hearing on December 8,

2004, at which Gray's claims were considered *de novo*.  (Tr. 336).  On December 21, 2004, the ALJ

issued his decision finding Gray not disabled as she has the capacity to perform light work. (Tr. 15).

Gray sought review of the ALJ's adverse decision with the Appeals Council.  The Appeals

Council will grant a request to review an ALJ's decision if any of the following circumstances are

present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in

reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or

---

[1]  "Tr." refers to the transcript of the administrative record.

conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970(a) (2004); 20 C.F.R. § 416.1470(a) (2004). After considering Gray's contentions in light of the applicable regulations and evidence, the Appeals Council concluded, on March 18, 2005, that there was no basis upon which to grant Plaintiff's request for review. (Tr. 6). The ALJ's findings and decision thus became final.

Gray filed a timely appeal of the ALJ's decision and a Motion for Summary Judgment. (Document No. 6). The Commissioner filed a response and Cross-Motion for Summary Judgment. (Document No. 7). This appeal is now ripe for ruling.

### III.  STANDARD OF REVIEW OF AGENCY DECISION

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). 42 U.S.C. § 405(g) limits judicial review of the commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g) (2004). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th

Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985).

Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289,

295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to

be "'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)). Substantial evidence

is "more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360

(5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be

established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence

of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th

Cir. 1983).

## IV.  BURDEN OF PROOF

An individual claiming entitlement to disability insurance benefits under the Act has the

burden of proving her disability. *Johnson*, 864 F.2d at 344. The Act defines disability as the

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. § 423(d)(1)(A) (2003). The impairment must be proven through medically

accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3) (2003). The

impairment must be so severe as to limit the claimant such that:

> [Sh]e is not only unable to do [her] previous work but cannot, considering [her] age,
> education, and work experience, engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of whether such work exists in the

immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A) (2003).  The mere presence of an impairment is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if [s]he is "'incapable of engaging in *any* substantial gainful activity.'"  *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1.    If the claimant is presently working, a finding of "not disabled" must be made;

2.    If the claimant does not have a "severe impairment" or combination of impairments, [she] will not be found disabled;

3.    If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.    If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5.    If the claimant's impairments prevent [her] from doing any other substantial gainful activity, taking into consideration [her] age, past work experience, and residual functional capacity, [she] will be found disabled.

20 C.F.R. §§ 404.1520, 416.920 (2004); *Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).  Under this process, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists.  *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work.  *Id.*  Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  If, at any step in the

process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 564.

Here, the ALJ found that Gray, despite her impairments and limitations, could perform light work, and that she therefore was not disabled within the meaning of the Act.  As a result, in this appeal, it must be determined whether substantial evidence supports the step-five findings.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age.  *Wren*, 925 F.2d at 126.

## V.  DISCUSSION

### A.  Objective Medical Facts

The objective medical facts show that Gray has been treated for hepatitis C, arthritis, and hypertension. (Tr. 67).  She has also claimed that she is unable to work due to depression. (Tr. 336).

The medical records indicate that Gray's hepatitis C is currently controlled.  On April 9, 2001, she was first referred to a gastrointestinal ("GI") clinic for the evaluation of hepatitis C.  (Tr. 99).  However, she did not go to the clinic for more than six months after the referral.  (Tr. 94).  At Ben Taub Hospital, Dr. Mei Zhang, ordered a CT scan of Gray's abdomen on November 12, 2001 which indicated a fatty infiltration adjacent to the left portal vein. (Tr. 94).  These findings were deemed to be unremarkable as there was no evidence of mass lesions, nor was there any free fluid or fluid collection.  (Tr. 140). In addition, Gray's bilirubin levels at the time were 0.1 and 0.2, which were normal, and were still normal on August 14, 2002. (Tr. 144 and 146).  Gray further claims that

the hepatitis has caused her to have chronic fatigue and sleep insomnia which have resulted in an

inability to do sustained activity and work.  (Tr. 142).  However, this claim is unsupported by the

above record which indicates that Gray's hepatitis is under control and has remained stable.

Gray also complains that she is unable do work due to severe pain from arthritis.  Gray has

been diagnosed with progressive arthralgia in her hips, which she claims causes her to have

difficulty walking and standing for long periods of time.  (Tr. 142).  A consultative examination on

August 14, 2002, evinced that Gray only had mild paracervical muscle spasms.  (Tr. 141).

Radiological findings of the right hip demonstrate that there has been some decrease in bone density,

and minimal early narrowing of the superior aspect of the joint.  (Tr 145).  Additionally, Dr. Frank

L. Barnes conducted an orthopedic consultative exam on February 12, 2004.  Gray claimed at that

time that she experiences pain all over her body which started in 1994, and has progressively gotten

worse. (Tr. 233).  However, Dr. Barnes' objective medical findings did not support the claim of "all

over" pain.  The exam showed:

> Manual Muscle Testing: Manual muscle testing of the upper extremities is grossly
> symmetrical.  It appears to be within normal limits.
>
> Right Shoulder: The right shoulder has abduction to 130 degrees and flexion to 130
> degrees and external rotation of 60 degrees and internal rotation of 90 degrees.
> There is no tenderness.  There is no effusion.  There is no increased temperature.
> The shoulder is stable in all planes to manipulation.
>
> Left Shoulder: The left shoulder examination shows 150 degrees of flexion and
> abduction and 90 degrees of internal and external rotation.  There is no increased
> temperature or tenderness and no effusion and no instability.
>
> Right Hip: The right hip has normal flexion to 120 degrees and full extension.
> External rotation is 30 degrees and internal rotation is 30 degrees which is somewhat
> less than normal.
>
> Left Hip: The left hip has 10 degrees of flexion while supine, but when sitting she
> flexes to 90 degrees.  There is 10 degrees internal and external rotation.  There is no

> tenderness about the [left] hip, although the left thigh is somewhat tender.  There is
> no swelling in either thigh.  The discrepancy of motion between sitting and standing
> is not explainable by physical means.
>
> Lumbar Spine: Curvature is normal without list or spasm.  There is no particular
> rigidity. She can bend forward 40 degrees, and extend 10 degrees, and bend laterally
> 10 degrees.  Straight leg raising tests on the left is painful at 10 degrees, but is
> normal when sitting.  She states that she cannot walk on her heels and toes.  There
> is no atrophy in the thighs or legs.  Knee and ankle reflexes are normal.

(Tr. 234).  Furthermore, based on his examination, Dr. Barnes stated that he believed that Gray could

do "any type of work she wishes to do," as his findings did not support Gray's allegations of total

body pain.  (Tr 234-35).

Next Gray claims that she is disabled due to hypertension and bradycardia, an abnormally

reduced heart rate.  However the medical record indicates that her blood pressure has generally been

well controlled with medication.  (Tr. 99).  On April 9, 2001, her blood pressure was 153/86.

Occasionally, Gray's blood pressure has elevated some, as noted on May 25, 2001, at 162/86.  (Tr.

112).  However, when she was examined five days later, the record shows that her blood pressure

had returned to a normal range of 122/75, and was well controlled.  (Tr. 111).  The medical record

demonstrates that the claimant's blood pressure has continued to remain at normal or slightly above

normal levels.  Gray's claims of bradycardia are also unsupported by the record since the first time

she has made such an allegation.  Although the medical record does show that Gray had reduced

heart rate on some occasions, it has also been documented that Gray's heart rhythm is "regular".

(Tr. 144, 247).  Furthermore, there is no medical record of a chronic reduced heart rate, nor have any

doctors raised concerns that Gray may suffer from the condition.  Because this court may not review

issues *de novo*, the claimant is not entitled to relief on her claim of bradycardia.

Finally, Gray alleges that she is unable to work due to depression.  The first complaints of

depression are documented on October 12, 2001, at which time Gray was prescribed Zoloft.  (Tr. 105).  Her next complaint does not appear until April 16, 2002, when Gray claimed that she had been depressed since her mother passed away and that she attempted suicide in 1998.  (Tr. 157). In 2003, Gray was prescribed Lexapro and Naproxin to treat her depression.  (Tr. 194).  Gray was again treated at Northwest Community Health Center for depression on November 24, 2003.  (Tr. 196).  This time, the attending physician diagnosed Gray with major depression based on her complaints of feeling sad, loss of appetite, suicidal thoughts, and fears of dying.  (Tr. 196).  On February 27, 2004, Gray was assigned a global assessment of functioning ("GAF") score of 50 by then-attending physician at Harris County Hospital District Psychiatric Clinic.  (Tr. 295).  The ALJ observed that according to the DSM  IV, "a score of 50 indicate[s] serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep job)." *Diagnostic and Statistical Manual of Mental Disorders IV*, page 32 (1996). (Tr. 17).  The ALJ found however, that the objective medical evidence did not support a score of 50.  (Tr. 213).  While the medical records indicate that Gray had thoughts of using a razor blade or gun to kill herself, she also stated she would not follow through on these thoughts.  (Tr. 316).  Additionally,  Gray was alert and oriented to person, place and time (Tr. 316).  There is no evidence that Gray had severe obsessional rituals or frequent shoplifting.  Furthermore, there is no evidence that Gray has any severe social impairments, as there are  frequent references in the record to Gray's local family and the fact that she lives with a roommate.  There is also no evidence that her inability to work is related to mental impairments rather than her physical impairments.  Most recently, Gray has been prescribed Zoloft

and Fluoxetine.  (Tr. 327).[2]   Additionally, she has been referred to a specialist for counseling;

however, she has not yet made an appointment.  (Tr. 324).

As set forth above, the objective medical evidence supports the ALJ's decision that although

impaired, Gray's alleged physical impairments do not limit her ability to engage in substantial

gainful employment.  Regarding Gray's claim that the ALJ failed to consider her bradycardia, there

is no objective evidence from the records of Gray's treating physicians relating to bradycardia.  In

fact, Gray has not complained of or been treated for the condition by any of her physicians.  While

objective medical evidence shows that Gray has complained of shortness of breath, fatigue and

dizziness, all possible symptoms of bradycardia, it does not show that these complaints indicate such

a diagnosis, nor that they are sufficiently severe to preclude her from substantially gainful activity.

In regards to Gray's allegation that the ALJ failed to give appropriate consideration to her

mental health complaints, the Court finds that the medical evidence supports the ALJ's

determination that Gray's symptoms were not severe or chronic enough to preclude the claimant

from engaging in any substantial gainful employment. See 42 U.S.C. § 423(d)(2)(A) (2003).

Although Gray's GAF score falls within the 41-50 range indicating serious symptoms, a score of

50 suggests that her symptoms and level of functioning is nearer to the next highest range on the

scale.  In this case, the next highest range, 51-60, indicates moderate symptoms which do not entitle

a claimant to social security disability benefits.  Here, the ALJ did not reject the GAF score, he

merely determined that the score was not supported by the medical evidence.  Therefore, since it is

within the discretion of the ALJ to review the medical evidence and make credibility determinations,

---

[2]   While the medical records show that as of June 22,2004, these medications were not
controlling Gray's depression enough to enable her to qualify for interferon therapy treatment for
her hepatitis C, she did receive other medications to control her condition.  (Tr. 310).

and since the court will not review the medical evidence *de novo*, the ALJ's determination that the

mental impairments were not severe or chronic was proper.

### B.  Diagnosis and Expert Opinions

The second element considered is the diagnosis and expert opinions of treating and

examining physicians on subsidiary questions of fact.  Unless good cause is shown to the contrary,

"the opinion, diagnosis, and medical evidence of the treating physician, especially when the

consultation has been over a considerable amount of time, should be accorded considerable weight."

*Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981).  For the ALJ to give deference to a medical

opinion, however, the opinion must be more than conclusory and must be supported by clinical and

laboratory findings.  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660

F.2d 1078, 1084 (5th Cir. 1981).  Moreover, "[a] treating physician's opinion on the nature and

severity of a patient's impairment will be given controlling weight if it is 'well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . .

. other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez*

*v. Chater*, 64 F.3d, 172, 176).  As such, if the treating physician's opinion is deficient in either

respect, or not supported by the evidence, then it is not entitled to controlling weight, and the ALJ

is free to reject it.  *Martinez*, 64 F.3d at 176.  A medical specialist's opinion is generally given more

weight that the opinion of a non-specialist.  *Newton*, 209 F.3d at 455.  Furthermore, regardless of

the opinions and diagnoses of medical sources, "'the ALJ has sole responsibility for determining a

claimant's disability status.'" *Martinez*, 64 F.3d at 176.

The Social Security Regulations provide a framework for the consideration of expert medical

opinions of a claimant's treating physician.  Under Section 404.1527(d)(2), consideration of a

treating physician's opinion must be based on:

1.      the physician's length of treatment of the claimant,

2.      the physician's frequency of examination,

3.      the nature and extent of the treatment relationship,

4.      the support of the physician's opinion afforded by the medical evidence of record,

5.      the consistency of the opinion with the record as a whole, and

6.      the specialization of the treating physician.

20 C.F.R. § 404.1527(d)(2); *Newton*, 209 F.3d at 456.  While opinions of treating physicians need

not be accorded controlling weight on the issue of disability, in most cases such opinions must at

least be given considerable deference.  *Newton*, 209 F.3d at 456.  The Social Security Regulations

provide guidance on this point as well.  Social Security Rule 96-2p provides:

> [A] finding that a treating source medical opinion is not well supported by medically
> acceptable clinical and laboratory diagnostic techniques or is inconsistent with the
> other substantial evidence in the case record only means that the opinion is not
> entitled to 'controlling weight," not that the opinion should be rejected.  Treating
> source medical opinions are still entitled to deference and must be weighed using all
> of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.  In many cases, a
> treating source's medical opinion will be entitled to greatest weight and should be
> adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p, 61 Fed. Reg. 34490 (July 2, 1996).  With regard to the weight to be

given "Residual Functional Capacity Assessments and Medical Source Statements", the Rule

provides that "adjudicators must weigh medical source statements under the rules set out in Section

404.1527. . ., providing appropriate explanations for accepting or rejecting such opinion[s]." *Id*.

The Fifth Circuit adheres to the view that before a medical opinion of a treating physician

can be rejected, the ALJ must consider and weigh the six factors set forth in Section 404.1527(d).

*Newton*, 209 F.2d at 456.  "The ALJ's decision must stand or fall with the reasons set forth in the

ALJ's decision, as adopted by the Appeals Council." *Id.* at 455.

Here, the ALJ's decision shows that he carefully considered the medical records and testimony with regard to Gray's physical and mental complaints, and that his determination reflects those findings accurately.  The ALJ, in evaluating this case, considered the "intensity, persistence, and limiting effects of the claimant's alleged symptoms: objective medical evidence; medical opinions; prior work record; daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; treatment other than medication; and other measures used to relieve symptoms." (Tr. 19).  Furthermore, the ALJ summarized the evidence and set forth specific reasons concerning the weight given to the opinions of the medical sources.  In regards to Dr. Colin-Rivera's opinion, the ALJ wrote:

> Dr. Colin-Rivera's opinion is given extremely little weight because it is unsupported by the objective clinical findings and is inconsistent with the evidence considered as a whole.  Specifically, the claimant's CT scan shows no evidence of a mass or ascites.  Additionally, the claimant has not developed cirrhosis (Exhibit 14F, page 37).  Thus, there is no support for the drastic limitations set forth in Dr. Colin-Rivera's opinion, including his statement that the claimant could sit for less than two hours (Exhibit 7F, page 5).  Because Dr. Barnes found discrepancies in her physical examination, it does not appear that the claimant has the serious arthralgias that she alleged.
>
> Moreover, Dr. Colin-Rivera did not indicate how long his treatment relationship with the claimant had lasted (Exhibit 7F, page 2).  Instead, he reported that he was a rheumatology clinic doctor (Exhibit 7F, page 2).  Thus, he was not the claimant's primary physician.

(Tr. 21).  Given that it is within the ALJ's province to weigh the medical opinions, and his determination is supported by the record, the ALJ did not err in his assessment of the medical opinions of Drs. Barnes and Colin-Rivera, and their reference to Gray's physical abilities.

In regards to Gray's depression claims, the ALJ relied on the testimony of medical expert, Albert Oguejiofor, M.D.  Dr. Oguejiofor testified that although the claimant had a history of

depression, she was responding to medication. (Tr. 16).  Therefore, since the medical evidence had

not indicated a mental impairment lasting longer than twelve months, and the medical evidence did

not support Gray's subjective complaints, the ALJ did not abuse his discretion in finding that Gray's

depression is not severe enough to entitled her to social security disability benefits.  Thus, in light

of the medical records submitted, the Court concludes that the diagnosis and expert opinion factor

also supports the ALJ's decision.

### C.  Subjective Evidence

The next element to be weighed is the subjective evidence of pain, including the claimant's

testimony and corroboration by family and friends.  Not all pain is disabling, and the fact that a

claimant cannot work without some pain or discomfort will not render her disabled.  *Cook v.*

*Heckler*, 750, F.2d 391, 395 (5th Cir. 1985).  Section 423 provides that allegations of pain do not

constitute conclusive evidence of disability. 42 U.S.C. § 423.  There must be objective medical

evidence showing the existence of a physical or mental impairment which could reasonably be

expected to cause pain.  Statements made by the individual or her physician as to the severity of the

plaintiff's pain must be reasonably consistent with the objective medical evidence on the record.

42 U.S.C. § 423(d)(5)(A) (2003).  "Pain constitutes a disabling condition under the Social Security

Act only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'"

*Selders*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)).  Pain may

also constitute a non-exertional impairment which can limit the range of jobs a claimant would

otherwise be able to perform.  *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994).  The Act requires

this Court's findings to be deferential.  The evaluation of evidence concerning subjective symptoms

is a task particularly within the province of the ALJ, who has had the opportunity to observe the

14

claimant.  *Hams v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983).

Gray testified at her hearing that she experiences pain in her joints and hips which requires her to walk with a cane.  (Tr. 339).  She also claimed that her depression medications make her dizzy and drowsy, stating that she is unable to leave the couch after she takes her medicine in the morning.  (Tr. 339 - 40).  Her typical morning routine is to eat and take her blood pressure medicine and then go for a little walk.  (Tr. 340).  Then she takes the rest of her medications and lies down.  (Tr. 340).  Furthermore, Gray testified that she is unable to do any housework, including cooking and cleaning because the medications make her dizzy and nauseous.  (Tr. 344 & 346).

While the ALJ held that Gray had "some pain and discomfort associated with her condition, such symptoms [were] found to be mild."  (Tr. 21).  Moreover, the ALJ found that "the testimony adduced at the hearing [was] not wholly credible or supported by the evidence as a whole insofar as the claimant allege[d] an inability to perform all work activity including light work. . .."  (Tr. 20).  In making this determination, the ALJ relied on the findings of medical expert Albert Oguejiofor, M.D. and Frank Barnes, M.D., an orthopedic surgeon, which were not found to support Gray's claims.  (Tr. 20).  The ALJ wrote that:

> The claimant has no neurological deficits, no significant orthopedic abnormalities, and no serious dysfunctioning of the bodily organs that would preclude light work. A CT scan of the claimant's abdomen performed on November 12, 2001, revealed no evidence of a mass lesion.  Likewise, there was no free fluid or fluid collection (Exhibit 2F, page 3).  On June 22, 2004, the claimant's physician noted that the claimant had no history of cirrhosis (Exhibit 14F, page 37).
>
> Moreover, Dr. Barnes' physical examination showed that the claimant's muscle testing of the upper extremities was normal.  The claimant's right shoulder was stable with no effusion.  Likewise, the claimant's left shoulder had no effusion and no instability.  The claimant's right hip had normal flexion to 120 degrees (Exhibit 11F, page 2).  The claimant's physical examination also had serious discrepancies. Specifically, the claimant's hip had ten degrees of flexion while standing but 90 degrees while sitting.  Her straight leg raising test was reported to be painful while

supine, but normal when sitting.  These discrepancies indicate that the claimant's complaints are not credible.

The claimant's alleged inactivity during the day is not supported by the objective clinical findings indicating that the claimant has an impairment capable of causing the degree of functional limitation alleged.  If true, the claimant's inactivity is more likely a matter of choice, lifestyle, or lack of motivation rather than the result of a medically determinable impairment.

(Tr. 20).  "Thus, [Gray's] allegations concerning her subjective symptoms [were] found to be credible to the extent that she is unable to perform medium and heavy work, but not credible to the extent that they preclude her from all work activities."  (Tr. 21).

Credibility determinations, such as that made by the ALJ in this case, are generally within the province of the ALJ to make.  *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). The court finds that there is nothing in the record to suggest that the ALJ made improper credibility findings, or that he weighed the testimony improperly.  *See Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995) ("It is appropriate for the court to consider the claimant's daily activities when deciding the claimant's disability status.")  Based on the record, there are significant inconsistencies between Gray's subjective complaints and the objective medical evidence.  The ALJ identified the inconsistencies and gave specific reasons for rejecting Gray's subjective complaints, such as the lack of medical evidence to support her subjective symptoms, discrepancies in her statement in light of the medical evidence and prescribed medications.  Accordingly, this factor also supports the ALJ's decision.

### D.  Education, Work History and Age

The final element to be weighed is the claimant's educational background, work history, and

16

present age.  A claimant will be determined to be under disability only if the claimant's physical or

mental impairments are of such severity that she is not only unable to do her previous work, but

cannot, considering her age, education and work experience, engage in any other kind of substantial

gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

The record shows that Gray was fifty-one years old at the time of the hearing, was college

educated, and had past work experience as a courier and a clerk.  (Tr. 16).  The ALJ determined that

Gray had the RFC to perform light work.  (Tr. 22).  In finding this, the ALJ determined both that

Gray's testimony regarding her inability to work was not completely credible and that Dr. Colin-

Rivera's opinion pertaining to Gray's ability to work was not supported by credible evidence and

thus, could not be given controlling weight.  (Tr. 21).  On the other hand, the Residual Functional

Capacity Assessment performed by Dr. George L. John, M.D., showed that Gray had no severe

physical limitations, and had full movement in her knees, ankles, and wrists.  (Tr. 153).  The ALJ

determined that Gray retained the RFC to do light work.  Further, he defined light work to include

lifting twenty pounds occasionally, frequently lifting ten pounds, and standing or sitting for six hours

in a work day.  20 C.F.R. § 404.1567(b) (2005).

"A vocational expert is called to testify because of his familiarity with job requirements and

working conditions.  'The value of a vocational expert is that he is familiar with the specific

requirements of a particular occupation, including working conditions and the attributes and skills

needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d

1168, 1170 (5th Cir. 1986)).  Here a vocational expert testified that "[Gray's] past work as a courier

was medium, semi-skilled work.  Her past work as a reproduction technician was heavy, semi-

skilled work."  (Tr. 21).  Although the court assumed that Gray does not have any past work

17

experience performing light work, given her educational background, the vocational expert found

that her skills would be transferable to light work, which would include a cashier, a data examination

clerk, a telephone survey clerk or a receptionist.  (Tr. 358).  Furthermore, the vocational expert

stated that there are significant numbers of these positions in the economy.  (Tr. 358).

Upon this record, substantial evidence supports the ALJ's use of the grid rules and the ALJ's

finding that Gray was not disabled.  The grid rules are used "when it is established that a claimant

suffers only from exertional impairments, or the claimant's non-exertional impairments do not

significantly affect [her] residual functional capacity." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir.

1999).  Here, the ALJ found that Gray did not have any significant non-exertional impairments that

would affect her ability to perform sedentary work.  As such the ALJ did not err in applying the grid

rules.  Given Gray's vocational profile and residual functional capacity, substantial evidence

supports the ALJ's conclusion that Gray is not disabled within the meaning of the Act and therefore

is not entitled to benefits.  Further, it is clear from the record that the proper legal standards were

used to evaluate the evidence presented.

Gray's mental state was not taken into account here, as the ALJ dismissed her depression

claim at an earlier stage.  Thus, given this Court's determination that  the ALJ's dismissal of Gray's

depression claim was proper, it is not necessary for the ALJ to examine whether Gray's mental state

precludes her from engaging in gainful employment.

## VI.  CONCLUSION

Based on the foregoing, and the conclusion that Gray's depression claim was properly

rejected, and that substantial evidence, including medical findings and relevant medical opinions

support the ALJ's determination that Gray can perform light work, the Court

ORDERS that the Defendant's Cross-Motion for Summary Judgement (Document No. 7),

is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 6) is DENIED, and the

Commissioner's decision is AFFIRMED.

Signed at Houston, Texas, this 19th day of September, 2006.


                                 _____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE